## STEPHEN THOMAS *v.* THE STATE.

1. THEFT—INDICTMENT AND VARIANCE.—An indictment for the theft of a gelding charged that the animal was taken from the possession of one B., who was also alleged to be the owner; but the proof showed that the animal, when taken, was in the possession of an employé of B., the owner, by the latter's permission. *Held,* that the possession of the servant was that of the owner, and was properly laid in the owner; and that there was no variance between the proof and the charge in the indictment.

2. PRACTICE.—As a general rule, no testimony should be allowed after argument to the jury has commenced; but the Code of Criminal Procedure (Pasc. Dig., Art. 3046) authorizes the judge to allow testimony at any time prior to the conclusion of the argument, if it appear necessary to the due administration of justice.

3. SAME.—Counsel for accused, while addressing the jury, moved the court to withdraw from the jury the testimony of a state's witness because he had not been sworn; whereupon the court allowed the witness to be recalled, sworn, and reëxamined. *Held,* that this was not error.

APPEAL from the District Court of Washington. Tried below before the Hon. E. B. TURNER.

The opinion of the court states the material facts.

*Goss & McFarland,* for the appellant.

"1st. The court erred in recalling Anderson Wade and allowing him to be sworn and testify after he had testified without being sworn, and after the testimony had closed, and while the argument for the defense was being heard."

We recognize the law allowing witnesses to be recalled for the purpose of settling any conflict of opinion between

attorneys as to what witnesses said, or for the purpose of dispelling a doubt on the minds of any of the jury concerning their testimony. But in the case at bar there was no such doubt on the minds of the jury, nor diversity of opinion between attorneys with regard to what Wade had said. The state simply remained passive, and allowed the witness to make his statement without being sworn ; and, after conducting its cause in this loose and negligent manner, ought it not to suffer the consequences of its own acts, and be prevented from recalling Wade to swear him to what he had already stated ?

The law requires every witness to be sworn before testifying, and judges and county attorneys are expected to look to the state's interest in this respect. Then, if the state neglects to pursue so simple and plain a course laid down in the law, was it not error for the court to recall the witness and have him sworn to the statement he had already made?

"The due administration of justice" mentioned by the statute (Art 3046, Pasc. Dig.) could have been obtained by properly introducing the witness in the first instance ; and, failing to do this, we believe that the court has abused the discretion confided in it, and *defeated* the ends of justice, and that, therefore, its action in this respect is error, and proper subject for revision.

"2d. The court erred in charging the jury that, in regard to possession, a man who has " a plantation, with horses and mules thereon, and hired men to use the horses and mules in making the crop and to ride upon, and the animal is stolen from such hired man, still the legal owner has the general property in the animals and the legal *possession* of such horses and mules for the purpose of charging theft from his possession, and the allegation of 'from the possession of the owner' is well laid in the real owner of the animal charged to have been stolen."

The indictment charges that the appellant did "take, steal, and carry away *from the possession of James Baldridge,* the owner thereof," and, by referring to the testimony of George Foster, this court will see that the gelding was stolen *from the possession of George Foster,* and not from the possession of James Baldridge. We have never contended that the *ownership* of the property was not properly laid, though the court below seems to have been under that impression. We made the point that the *possession* should have been laid in George Foster before a legal conviction could be had on the proof. Paschal's Digest, Article 2381, says that "theft is the fraudulent taking of corporeal personal property, belonging to another, *from his possession,* or from the possession of some person *holding the same for him."* And in the case of *Gadson* v. *The State,* 36 Texas, 350, it is clearly decided that "in an indictment for theft it is necessary to charge that the property stolen was taken from the possession of the owner, or from the possession of some person *holding the same for the owner."* In the case at bar the indictment nowhere charges that Foster *was holding the gelding for Baldridge.* And in the case of *Garcia* v. *The State,* 26 Texas, 211, the court say that Article 765 of the Penal Code "makes the stealing of one of the domestic animals enumerated in it a distinct offense from theft in general, as defined by the previous Articles. But in this Article of the Code there is no definition of the offense inhibited by it, and to ascertain this we have to look to the definition of theft as given in the preceding Articles; and there we find that the allegation of the possession from which the stolen property was taken is made, by the definition of the offense, a necessary ingredient in its description. This allegation is omitted in the indictment in this case; it is, therefore, defective, and the motion in arrest of judgment should have been sustained." The case at bar is, we conceive, exactly in point.

Again, in 35 Texas, 16 (*Radford* v. *The State*), the court say: "There was also a fatal variance between the allegations of the indictment, laying the possession of the property said to have been stolen in Jeremiah N. Sawyer, and the evidence, which showed the possession to have been in the steamship company of C. H. Mallory & Co." In the case at bar the indictment alleges that the gelding was stolen from the possession of James Baldridge, but the evidence proves that the gelding was stolen from the possession of George Foster.

What is possession? Article 2387, Paschal's Digest, says: "Possession of the person so unlawfully deprived of the property is constituted by the *exercise* of *actual control*, care, or *management* of the property, whether the same be lawful or not." And the testimony of both James Baldridge and George Foster proves beyond any manner of doubt that the gelding stolen was under the *actual control*, *care*, and *management* of George Foster, and was stolen from his possession; and the possession here spoken of is *actual*, and not *constructive*, possession; and where the possession is in some person other than the owner the indictment must negative the consent of the possessor; for if the property is taken with the consent, or there is no evidence of the want of the consent, of the person holding, it does not constitute theft. It was clearly necessary to charge possession in some person, and it has been charged in the owner of the gelding. But the state failed to prove the possession as alleged, and, it being a material allegation in an indictment for theft, the state failed to prove its case, and the appellant was entitled to a verdict of not guilty. The error of the court in giving the charge complained of, and the evident injustice it has worked upon the appellant, we conceive to be so clearly manifest that we have no fears in asking this court, on this ground alone, to reverse and dismiss the cause.

The court erred in refusing to charge the jury that the state must prove the possession of the horse as alleged in the indictment. We asked this charge, based upon the general and recognized principle of law that the state must prove every material allegation in the indictment as alleged; and, having *charged the possession in Baldridge, it must prove the possession in Baldridge.* Proof of possession in George Foster, *as agent of Baldridge, is not* proof of *possession in* Baldridge. The *possession* contemplated by the statute, with respect to indictments for theft, is actual, and not constructive. The proof shows that the gelding was taken from the possession of George Foster, but neither the proof nor the allegations of the indictment say that it was taken from his possession *without his consent,* and the want of consent constitutes one of the principal ingredients in all indictments for theft. The testimony adduced, as well as the law (Pasc. Dig. 2381), shows that this was a very material allegation, for without it no theft could be committed, as the thing stolen must be taken from the *possession* of some one. It is undoubtedly the duty of the court to charge the jury all the law applicable to the facts of the case, and leave the facts to the finding of the jury. "A charge either given or refused must be taken in view of the evidence," and if a charge be asked that is the law governing the facts of the case it ought to be given to the jury. In the case at bar the court refused to give the jury the law governing the facts as proved, as well as those which are necessary to be proved before a conviction could have been legally had under the indictment. If we had gone beyond this particular case the court might have been justified in refusing the charge asked; but we think that the charge asked for was only a fair and impartial statement of the law applicable to the facts in this case, and that, therefore, the court erred in refusing to give the charge asked for in behalf of the appellant.

5th. The court erred in refusing to charge the jury that, "if you believe from the evidence that the horse was not

in the actual possession and under the control of Baldridge, as alleged in the indictment, but was in the possession of George Foster, at the time the theft is alleged to have been committed, you will return a verdict of not guilty, as asked in behalf of the defendant." The charge is founded on the principle of law that the *allegata* and *probata* must agree, and that the state must prove all of its material allegations as alleged. The indictment alleges as a fact that the gelding was stolen from the possession of James Baldridge, which allegation is not sustained by the proof. Greenleaf says : "*If it is a proposition of fact, it is to be tried by the jury upon the evidence adduced.* And it is an established rule, which we state as the 'First *Rule*' governing in the production of evidence, that the evidence *offered must correspond with the allegations*, and be confined to the point in issue." See 1 Greenl. on Ev. 61, 62, sec. 51. And in the case of *Paul* v. *Perez*, 7 Texas, 345, the court say, Judge Lipscomb rendering the opinion of the court : " The principle that the *allegata* must be broad enough to admit all the necessary proof, and that every material fact must be alleged, has often been declared by this court—first solemnly adjudicated in *Mims* v. *Mitchell*, 1 Texas, 443, and sustained by an unbroken train of decisions from that time down to the present." The state was unfortunate, in this instance, in charging the possession in one person and proving it in another. Yet, after the state had made so great a blunder, and the case had gone to the jury to pass upon, and the appellant was so clearly entitled to an acquittal under the law, was it not error in the court to refuse to charge the law to the jury concerning this failure to prove one of its most material allegations, and thereby concealing an issue from the jury that should have gone to them for their verdict?

*George McCormick*, Assistant Attorney General, for the State.

Ector, Presiding Judge. The appellant was indicted in the district court of Washington county for the theft of a gray gelding, the property of James Baldridge. He was convicted by the jury, and his punishment assessed at eight years' confinement in the penitentiary. The indictment is a good one. The court, in its charge to the jury, gave the law as applicable to the testimony.

James Baldridge testifies that the gray gelding, charged in the indictment to have been stolen, was his property; was used on his plantation to help make crops; that a hired man by the name of George Foster worked, fed, and took care of said animal, and often rode him off of the place by his (Baldridge's) permission; and that said gelding was stolen about the last of March, 1876. The testimony further shows that George Foster had ridden said gelding from the place where he worked to another place in the neighborhood where there was a dance, or party, and during the party, at night, said gelding was stolen as charged.

In behalf of the appellant it is insisted that the judgment of the court below must be reversed because the gelding, as the proof shows, was taken from the possession of George Foster, and not from the possession of James Baldridge. The possession of George Foster of said gelding, under the circumstances as shown from the evidence, was in law the possession of James Baldridge, who was still the legal owner, and had the general property in said animal. The allegation in the indictment that said gelding was taken from the possession of James Baldridge (the real owner) is in strict conformity with the rules of pleading.

Mr. Wharton lays down this rule : " If the person named as owner is merely servant to the owner, the defendant must be acquitted; for a servant has not a special property in the goods, the possession of the servant being the possession of the master."

Our Code of Criminal Procedure provides that " it is not

necessary, in order to constitute theft, that the possession and ownership of the property be in the same person at the time of the taking." Art. 2386, Pasc. Dig.

The supreme court of this state have had occasion to pass upon this question. See *Langford* v. *The State*, 8 Texas, 116; *Moseley* v. *The State*, 42 Texas, 79; *Cox* v. *The State*, 43 Texas, 101.

We have been referred to three opinions of the same court, in the brief of the counsel for the appellant, to support the position contended for by them—that the possession of the gelding should have been laid in George Foster before a legal conviction could be had on the evidence in this case. By a careful reading of these decisions it will be seen that they do not sustain the position so strenuously insisted on by counsel. These cases all differ from the case at bar. In the case of *Garcia* v. *The State*, 26 Texas, 211, and also in the case of *Gadson* v. *The State*, 36 Texas, 350, the indictments do not charge from whose possession the property was stolen, and, therefore, were fatally defective. And in the case of *Radford* v. *The State*, 35 Texas, 16, the judgment of the court below was reversed because the indictment charged that the property was taken from the possession of Jeremiah Sawyer, the Galveston agent of a New York steamship company, when the evidence showed that it was from the vessel of said company. The judgment in this last case could not have been reversed had the indictment charged that the property was taken from the possession of the said steamship company, or if the proof had shown that the property had been delivered to, and was in possession of, Sawyer, as agent aforesaid, when it was stolen.

The action of the court in permitting Anderson Wade, a witness for the state, to be recalled, sworn, and examined as a witness before the argument of the case had concluded, is assigned as error. It appears from the transcript

that one of the attorneys for the appellant, after it had been announced by both sides that they were through with their evidence, during his speech to the jury turned and asked the court to withdraw from the jury the testimony of the witness Anderson Wade because he had not been sworn as a witness in the case. The county attorney insisted that the witness had been sworn. The court permitted the witness then to be sworn and to testify as a witness for the state.

Our Code of Criminal Procedure (Art. 3046, Pasc. Dig.) provides that "the court shall allow testimony to be introduced at any time before the argument of a cause is concluded if it appears that it is necessary to a due administration of justice." As a general rule, after the argument of a cause has commenced no testimony should be allowed. Cases sometimes will arise when the presiding judge, in his discretion, should relax this rule if he believes it necessary to a due administration of justice. We do not believe that the court erred, under the circumstances, in permitting the witness Wade to be recalled, sworn, and examined as a witness.

It was not error in the court to read the paragraph of the case (*Langford* v. *The State*, 8 Texas, 15) in the hearing of the jury. This is frequently done; attorneys and judges often read the law in the presence of the jury, and we can see no possible injury to appellant that could have resulted from reading said opinion, inasmuch as the judge correctly gave, in his charge to the jury, the law on the same subject.

We believe this opinion disposes of all the assignments of errors except the 6th, and as to this one it is sufficient to say that the verdict of the jury is abundantly sustained by the evidence, and is not contrary to law. The judgment of the district court is affirmed.

*Affirmed.*