(129 So. 74)

## MACRUM v. SECURITY TRUST & SAVINGS CO.

### 6 Div. 466.

Supreme Court of Alabama.

April 10, 1930.

Rehearing Denied June 19, 1930.

W. A. Denson, of Birmingham, for appellant.

Crampton Harris, of Birmingham, for appellee.

FOSTER, J.

Appellant was the plaintiff in a tort action in the circuit court. For the purposes of this appeal the facts alleged in counts 3 and 4 of the complaint may be summarized as follows: Appellant was manager of a plumbing and heating company, which was a depositor in defendant's bank. He, as such manager, and with authority, issued a check of the company on such bank. There were sufficient funds of the company in the bank subject to the check. The bank refused to pay the check, wrongfully and falsely stating that the company did not have sufficient funds. Appellant was ar-

rested and placed in jail and suffered other special damages set out. The court sustained demurrer to these counts. Appellant took a nonsuit on account of such ruling and assigns it as error.

Appellee in brief and oral argument seeks to sustain this ruling of the court on that ground of demurrer which points out that the complaint does not state a cause of action. The particular in this respect, as argued, is that the complaint shows no breach of duty to appellant in the respect charged, but only a breach of duty to the company of which appellant was manager. It appears that the result on this appeal should be determined by a proper decision of that claim as to the sufficiency of the complaint.

It is, of course, well understood that if a check is duly issued on a bank by a depositor having sufficient funds subject to it and it is properly presented for payment, and payment is wrongfully refused, a cause of action arises in favor of the depositor. He may sue for the breach of contract, and (or) in tort for the breach of a duty arising out of the contract. First Nat. Bank v. Stewart, 204 Ala. 199, 85 So. 529, 13 A. L. R. 302; Hooper v. Herring, 14 Ala. App. 455, 70 So. 308; Id., 9 Ala. App. 292, 63 So. 785; 2 Morse on Banks and Banking (6th Ed.) § 458; 7 C. J. 696.

The form of action in counts 3 and 4 is in tort arising out of contract. The contract was not with appellant, and he cannot sue for its breach. But, by reason of the contract, the question is, Did its breach constitute the violation of a duty to appellant, who was the manager, as alleged, of the depositor, and who executed and issued the check?

Of course, it is axiomatic that there can be no tort action maintained except against one who owed a duty fixed by law to the plaintiff, whether or not there is a contract establishing the relations of the parties. In order to sustain a tort action under such circumstances there must be the breach of a positive duty to plaintiff which the law imposes as an incident to the contract, when one exists. 38 Cyc. 418, 426, 427; Wilkinson v. Moseley, 18 Ala. 288; authorities supra.

The difficult question which confronts us on this appeal is whether there may be a legal duty owing by a banker to the *manager* of a depositor company, by reason of such deposit, to honor and pay the proper checks of the depositor, properly issued by such manager, when sufficient funds are on deposit, and when such checks are properly presented for payment. In solving that inquiry resort may be had to some common-place legal doctrines, and settled principles.

It is said that, when the sole duty is that created by contract, the action is usually limited to the parties to such contract or their

privies. But not so, though the contract is necessary to sustain the action, where there is an invasion of a legal duty to the plaintiff independently of or concurrently with the contract, though he is not a party to it. 38 Cyc. 433, 434.

We have applied that doctrine to the manufacturer of merchandise for human consumption, when, through negligence or willful conduct, it is not suitable for such purpose. The ultimate consumer was not a party to the contract and cannot sue for its breach, but may, when intended for consumption by the public, sue in tort for the negligence of the manufacturer resulting in injury to him as the proximate result. B'ham Chero Cola Co. v. Clark, 205 Ala. 678, 89 So. 64, 65, 17 A. L. R. 667; Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 So. 657; Try-Me Beverage Co. v. Harris, 217 Ala. 302, 116 So. 147.

It was said by this court that "An act of negligence of a manufacturer or seller, which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy, or affect human life, is actionable by third persons who suffer from the negligence regardless of the privity of contract." B'ham Chero Cola Co. v. Clark, supra. This doctrine has been applied to many situations, as pointed out in the note to 38 Cyc. 434, to the effect that whenever an article is sold to one, but known to be for use by third persons, and it is known by the seller to be inherently dangerous to such persons, or there was negligence in not so knowing, the seller will be liable in tort to the third person proximately injured by such condition without fault on his part, since there is the violation of duty independent of, but concurrent with contract. He cannot escape liability on the ground of want of privity of contract between him and the person injured. 24 R. C. L. 514, 515. Upon this principle a tort action will lie against the landlord in favor of the members of the family of a tenant, when the tenant himself could have maintained such an action for the breach of a duty to repair. Anderson v. Robinson, 182 Ala. 615, 62 So. 512, 47 L. R. A. (N. S.) 330, Ann. Cas. 1915D, 829.

▪ It would seem that the underlying principle (the basis of all actionable torts) is that one owes another the duty fixed by law not negligently or willfully or wrongfully to do an act which will probably injuriously affect him, unless there be legal justification. In respect to beverages, it is said, "The foundation of the liability here, as elsewhere, is the superior *knowledge* of the manufacturer or seller as to the peril embodied in the article sold." 24 R. C. L. 514.

▪ As applicable to the instant case, the jury may find that the banker should have had *knowledge of the peril of plaintiff individually* to sustain some nature of damage as the proximate result of the wrongful refusal to cash the check issued by the plaintiff, the manager, and in the name of his principal. Stated otherwise, could it be said to be reasonably foreseeable, or that there was reasonable danger that this plaintiff individually would sustain damage, as the proximate result of the alleged negligent, willful, or wanton wrong of the bank, though such wrong consisted of a breach of contract with the plaintiff's principal, for which such principal would have a tort action?

Our conclusion is that the answer to the above inquiry is that it should be left to the jury on proper proof and not be determined as a matter of law whether such alleged wrong did or did not proximately injure him and constitute the basis of a tort action, when the complaint alleges that it did. The nature of the recoverable damages is not here presented, and not now considered.

▪ Counsel for appellee argue that, though the complaint alleges that plaintiff was manager of the company, it is not alleged that the bank had any such knowledge. While there is no ground of demurrer which goes to that claim, and assuming a want of averment in that respect, we think that an answer to it is that the complaint shows that the check was refused because of a claim that "there were no sufficient funds in said bank subject to the payment of said check." If the officers of the bank had doubt of the authority of plaintiff to draw the check the refusal to pay should have been placed on that ground, and not on the claim that there were no sufficient funds; and in that event a different question would exist.

Other grounds of demurrer do not seem to point out material defects in counts 3 or 4.

We therefore conclude that the demurrer to counts 3 and 4 were improperly sustained.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

▪ We did not feel called upon in our former opinion to discuss the question of whether each of the special damages claimed could be recovered in this action. It is too well understood, we thought, again to refer to the fact that such questions cannot be tested by demurrer to the complaint. We therefore concluded that in confining our consideration to the question primarily argued we would be giving the proper treatment to the case.

We did not express an opinion that the arrest of plaintiff, as claimed in the complaint, was a proper item of recoverable damages. The question which seemed to us to be the only one involved, was whether a cause of action is stated in the complaint. On this ap-

plication we have been cited to several cases holding that on the facts stated in them such damages may not be recovered, as follows: Hartford v. All Night and Day Bank, .170 Cal. 538, 150 P. 356, L. R. A. 1916A, 1220; Waggoner v. Bank of Bernie, 220 Mo. App. 165, 281 S. W. 130; Bearden v. Bank of Italy, 57 Cal. App. 377, 207 P. 270; Bank of Commerce v. Goos, 39 Neb. 437, 58 N. W. 84, 23 L. R. A. 190; Western Nat. Bank v. White, 62 Tex. Civ. App. 374, 131 S. W. 828; and contra, Mouse v. Cent. Sav. & Trust Co., 120 Ohio, 599, 167 N. E. 868, to which we may add, Woody v. Nat. Bank, 194 N. C. 549, 140 S. E. 150, 58 A. L. R. 725, 731, and note page 732.

We merely content ourselves with citing the cases, without expressing any view. Appellant has not undertaken to give his citations or argument on which he relies to sustain this claim of damages, but points out that the question is not properly raised, and such we find to be the fact.

Appellee also challenges the correctness of the conclusion that the complaint states a cause of action. The more we study the question, the better we are convinced that it does state a cause of action.

■ The authorities generally sustain the view that the wrongful refusal to honor a check is a very effectual way of slandering the depositor in his trade, and that this character of case is akin to and comes within the category of slander suits. 5 R. C. L. 74: First Nat. Bank v. McFall & Co., 144 Ark. 149, 222 S. W. 40; McFall v. First Nat. Bank, 138 Ark. 370, 211 S. W. 919, 4 A. L. R. 940; Lorick v. Palmetto Bank & Trust Co., 74 S. C. 185, 54 S. E. 206, 7 Ann. Cas. 818; Svendsen v. State Bank of Duluth, 64 Minn. 40, 65 N. W. 1086, 31 L. R. A. 552, 58 Am. St. Rep. 522; State Bank v. Marshall, 163 Ark. 566, 260 S. W. 431, 34 A. L. R. 202; 2 Moore on Banks and Banking (6th Ed.) § 458, p. 1008.

The distinction is sometimes said to be that a slander, properly considered, is where defamatory words are used, whereas this nature of tort is in effect defamation by acts. James Co. v. Con. Nat. Bank, 105 Tenn. 1, 58 S. W. 261, 51 L. R. A. (N. S.) 255, 80 Am. St. Rep. 857.

The act of the banker in refusing to honor the check is said to impute insolvency or bad faith to the drawer of the check, and has the effect of slandering the merchant or trader in his business. State Bank v. Marshall, supra; McFall v. First Nat. Bank, 138 Ark. 370, 211 S. W. 919, 4 A. L. R. 940; First Nat. Bank v. N. R. McFall & Co., 144 Ark. 149, 222 S. W. 40; Patterson v. Marine Nat. Bank, 130 Pa. 419, 18 A. 632, 17 Am. St. Rep. 778; Svendsen v. State Bank, supra.

■ The courts generally agree that there is a distinction in the measure of damages for dishonoring a check when the depositor is a trader and when he is a nontrader. First Nat. Bank v. Stewart, supra; McFall v. First Nat. Bank, 138 Ark. 370, 211 S. W. 919, 4 A. L. R. 947, et seq.; 13 A. L. R. 306; State Bank v. Marshall, 163 Ark. 566, 260 S. W. 431, 34 A. L. R. 205; James Co. v. Bank, 105 Tenn. 1, 58 S. W. 261, 51 L. R. A. (N. S.) 255, 80 Am. St. Rep. 857, note 867; Patterson v. Marine Nat. Bank, 130 Pa. 419, 18 A. 632, 17 Am. St. Rep. 778.

Taking the view that the wrongful dishonor of the check of a depositor is akin to slander, and imputes insolvency, dishonesty, or bad faith to the drawer, and is in fact a defamation by conduct, it is apparent that such doctrine applies to him who is by such conduct directly defamed. The jury could find that the defamation directly applied to plaintiff, whose name was signed to the check for the depositor. The act of giving a worthless check, as affects its morals, was that of plaintiff personally. The conduct of the bank could be construed as a claim that plaintiff in a representative or official capacity had thus drawn a check of the depositor which had no funds subject to it, and was therefore an act of dishonesty and bad faith on his part, as an individual. If this is a defamation by conduct of the depositor, the jury could infer that it was such of plaintiff also. In keeping with this theory the Supreme Court of South Carolina made the following observations in De Launay v. Union Nat. Bank, 116 S. C. 215, 107 S. E. 925:

"The main point raised by the exceptions is that, the account standing in the name of the plaintiff as treasurer, his personal credit was not affected by the dishonor, and he is not therefore entitled to damages. The theory upon which damages, substantial, but temperate in amount, are allowed in such cases, is that the dishonor of the check presumptively results in injury to the credit of the depositor; it being a declaration against his solvency and correct business dealings. Lorick v. Bank, 74 S. C. 188, 54 S. E. 206, 7 Ann. Cas. 818; Wilson v. Bank, 113 S. C. 508, 101 S. E. 841. A fiduciary is supposed to be more particular with the trust funds than with his own, and his laxity in reference to them is correspondingly a greater reflection, not only upon his credit, but upon his business methods and the scrupulous care which he should exercise."

So that we think the result, as originally announced by us, follows, viz.: That the complaint states a cause of action, for that it is in the nature of a defamation of plaintiff by conduct, and this is in line with the reasoning in our former opinion.

Our attention is called to the fact that in the opinion we stated that the complaint shows the check was refused because of a claim that "there were no *sufficient* funds in said bank subject to the payment of said check," whereas the complaint does not use the word "sufficient" in this connection. We

observe that counsel for appellee are correct in this respect. However, we cannot agree with them that the effect is different. We do not think that a proper interpretation of such language is that it meant to challenge the authority of plaintiff to draw the check in the name of the depositor. It would certainly be a most unusual and misleading way of declining payment on that account. To say that there are "no funds in the bank subject to the check" means to question the authority of plaintiff to draw it, is a construction we are not willing to accord such language.

We do not feel justified in departing from the conclusion reached in the former opinion, and the application for rehearing is overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.