160 So. 704

FIRST NAT. BANK OF MOBILE v. DU-
CROS.

I Div. 237.

Court of Appeals of Alabama.

June 2, 1936.

Smith & Johnston, of Mobile, for appellant.

DeGraffenried, Callahan & Skidmore, of Tuscaloosa, and W. C. Taylor, of Mobile, for appellee.

SAMFORD, Judge.

Plaintiff in the court below claimed of the defendant $5,000 damages for the breach of a contract as set out in count 1 of the complaint in words and figures as follows, to wit: "Plaintiff claims of the defendant the sum of Five Thousand ($5,000.00) Dollars as damages, for that heretofore on, to-wit, the 1st day of June 1934, that the defendant was engaged in doing a regular banking business in the City of Mobile, State of Alabama; that the plaintiff entered into a contract with the defendant, through one of the defendant's agents, whose name is otherwise to the plaintiff unknown, and while said agent was acting within the line and scope of his authority, it was agreed that the plaintiff would deposit certain monies with defendant in a Savings Account, but would be permitted to draw said money out of said Savings Account on a check at any time thereafter, upon leaving his Savings Deposit Book with the defendant. Plaintiff avers that shortly afterwards, prior to the 1st day of July, 1934, that the plaintiff deposited said Savings Account Book with the defendant, and on, to-wit, the 1st day of July, 1934, did draw check payable to M. C. Thompson on defendant, bank, against his said Savings Account in accordance with said agreement, which said check was endorsed by payee of said check, and said check was in due course presented to defendant and that the defendant refused or failed to honor said check, although sufficient funds belonging to plaintiff were on deposit with defendant, thereby breaching its contract with the plaintiff, and as a proximate result of the defendant's refusal or failure to honor said check, in accordance with said agreement, the plaintiff was greatly damaged, humiliated, embarrassed, and caused to spend much money and time, all to his damages in the sum of Five Thousand ($5,000.00) Dollars, as aforesaid: Whereupon he sues."

Count 2 was eliminated by the affirmative instruction of the trial court.

■ The foregoing count sets forth every element of the contract necessary to a recovery, alleges its breach, and claims damages as a result thereof, and is not subject to any of the grounds of demurrer filed thereto. Mansfield v. Morgan, 140 Ala. 567, 37 So. 393.

■ It is well understood that if a check is duly issued on a bank by a depositor having sufficient funds subject to withdrawal and such check is properly presented for payment and payment is wrongfully refused, a cause of action arises in favor of the depositor. In such case, he may sue for a breach of contract or for the breach of duty arising therefrom. In this case, the plaintiff has elected to bring his suit for the breach of the contract and for damages which naturally flow therefrom. First National Bank of Huntsville v. Stewart, 204 Ala. 199, 85 So. 529, 13 A.L.R. 302; Hooper v. Herring, 14 Ala.App. 455, 70 So.

308; Macrum v. Security Trust & Savings Company, 221 Ala. 419, 129 So. 74.

As was pointed out specifically in the case of Macrum v. Security Trust & Savings Company, 221 Ala. 419, 129 So. 74, in the opinion rendered on rehearing, there is a distinction in the measure of damages for dishonoring a check when the depositor is a trader and when he is a nontrader, and in that case numerous authorities were cited to support that holding.

In the instant case, the plaintiff was a nontrader; that is, he was not engaged in buying and selling where it was necessary for him to establish a credit in the commercial world; nor are there any facts in this case presenting a peculiar set of circumstances whereby a failure on the part of the defendant to pay plaintiff's check is so coupled with matters of mental concern or solicitude or with the feelings of the party to whom the duty is owed that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, as was the case in Southern Railway Company v. Rowe, 198 Ala. 353, 73 So. 634; McConnell v. United States Express Company, 179 Mich. 522, 146 N.W. 428, Ann.Cas.1915D, 80. Nor is there any evidence in this case tending to show that the breach of the contract was tortious or attended with personal injury, as was the case in Vinson v. Southern Bell Telephone & Telegraph Company, 188 Ala. 292, 66 So. 100, L.R.A. 1915C, 450.

█ Both of the two exceptions to the general rule that damages cannot be recovered for mental anguish in an action of assumpsit were adverted to and adopted in the case of Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 141 So. 630. The facts in this case bring the controversy clearly within the terms of section 9221 of the Code of 1923, which provides that no bank shall be liable to a depositor because of the nonpayment, through mistake or error and without malice, of a check which should have been paid, unless the depositor shall allege and prove actual damage by reason of such nonpayment, and in such event, the liability shall not exceed the amount of the damage so proved. The above is but a statutory statement of the broad general rule that a wrongdoer is liable to the person injured in compensatory damages for all the natural and direct or proximate consequences of his wrongful act or omission, and conversely, subject to some qualifications and exceptions, he is liable only for such consequences. 17 Corpus Juris, 728 (69).

█ The undisputed facts in the instant case show that the plaintiff, who had on deposit with the defendant bank, in its savings department, some two hundred odd dollars under an original contract, as shown by the passbook, that the savings could only be withdrawn by a check accompanied by the passbook, went to the bank and notified it that he was going on a trip to be gone some six weeks or two months, and suggested that he withdraw his money from the savings department and place it in a checking account, as he would probably need it during his trip. He was told by the bank, or one of its officials, that that would not be necessary, but for him to leave his passbook with the bank, and when he drew his checks to mark them "Savings Account," and that the bank would pay them and charge them to the proper account. With this understanding, the plaintiff left Mobile, went to Little Rock, Ark., where he remained for some six weeks, returning to Tuscaloosa, where he had occasion to draw some of his money. Thereupon, he drew a check for $10, which was cashed by a Mr. Thompson, who put it in the usual channels, and when it reached the defendant bank and was presented for payment, the bank refused to pay, stamping on the face of the check the following: "Savings pass book must accompany check." The check was thereupon returned through the usual course to Thompson, and Thompson demanded payment of this plaintiff. Whereupon, plaintiff wrote to the bank regarding its failure to pay the check and on July 18th received a letter, signed by the defendant's vice president, in which he was informed: "We have your letter of the 17th. The pass book for your savings account No. 86693 was mailed by us on June 21st, addressed to you at 255 No. Claiborne Street, after we had paid three checks against the account. Evidently there was some misunderstanding as you must have intended that we continue to hold the book. If you will send the book back in and have the check mentioned in your letter re-presented, we will be very glad to make payment of the check and charge the amount to the account. Regretting the inconvenience which you have been put to, we are." After receipt of this letter, plaintiff drew on the account, took up the check which he had given, and subsequently withdrew the

remainder of the deposit from the defendant bank.

Plaintiff, on leaving Mobile, had delivered the passbook to the bank, and, although the bank had mailed the passbook to the plaintiff at his address in Mobile, the plaintiff had not received it at the time he gave the check to Thompson in Tuscaloosa.

There is some evidence in the case tending to prove that it took the plaintiff about two weeks to get the matter straightened out and the money repaid to Thompson for the check which had been turned down, and that the plaintiff was thereby delayed for that length of time in his return to his home in Mobile and to his job, which paid him from one hundred and fifty to one hundred and sixty-five dollars a month. It also reasonably appears that the two weeks' board in Tuscaloosa was $6 a week, or $12. But as to this, there was no occasion for the plaintiff to have remained in Tuscaloosa or away from his job. He had the $10 which he had obtained from Thompson in his pocket and the slight inconvenience arising out of the failure to pay the check, coupled with the reason written on the check that it was not paid because not accompanied by the pass book, could not have affected plaintiff's credit.

There were many objections and exceptions to the introduction of evidence relating to the proper damages to be awarded. Some of the rulings of the court on these objections were not in line with the foregoing opinion, but, as we view the record, these rulings did not injuriously affect the substantial rights of the defendant. As far as we can see and giving effect to every legal inference which may be drawn from the facts, this court is of the opinion that the plaintiff has suffered no damage of an appreciable amount. And while we hold that, under the decisions, the plaintiff is entitled to a recovery, such recovery under the evidence can only be nominal.

The verdict of the jury was for $300, which was entirely excessive. The defendant made a motion for a new trial, one of the grounds of which is that the verdict is excessive. This court so holds.

The trial court should have granted the motion for a new trial on this ground, and for the error in not so doing, the judgment is reversed and the cause is remanded.

Reversed and remanded.